**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Andersen Windows, Inc., a Minnesota corporation,

Plaintiff,

v.

Delmarva Sash & Door Co. of Maryland, Inc., a Maryland corporation,

Defendant.

Civil No. 02-74 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Leon R. Goodrich, Esq., Oppenheimer Wolff & Donnelly, L.L.P., W 1700 First Bank Building, 332 Minnesota Street, St. Paul, Minnesota 55101; Kari L. Wraspir, Esq., Oppenheimer Wolff & Donnelly L.L.P., 3400 Plaza VII Building, 45 South Seventh Street, Minneapolis, Minnesota 55402; Mark N. Poovey, Esq., and David A. Shirlen, Esq., Womble Carlyle Sandridge & Rice PLLC, P.O. Drawer 84, Winston-Salem, North Carolina 27102, on behalf of Plaintiff.

Seth J. Sergent-Leventhal, Esq., Dorsey & Whitney L.L.P., 50 South Sixth Street, Suite 1500, Minneapolis, Minnesota 55402-1498 and David A. Reif, Esq., Cummings & Lockwood L.L.C., 700 State Street, P.O. Box 1960, New Haven, Connecticut 06904-0210, on behalf of Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on June 14, 2001, pursuant to Defendant Delmarva Sash and Door's Motion to Dismiss. In its Complaint, Plaintiff Andersen Windows ("Andersen") brings claims for breach of agreement and injunctive relief that would require DSD to file any and all lawsuits in Minnesota courts. Andersen's claims are based on its contentions that DSD breached the termination, damage limitation, and forum selection provisions of the distributorship agreement

FILED JUN 2 8 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

between the parties. In addition to the injunctive relief requested, Andersen seeks damages to be proven at trial. By its current motion, DSD seeks to dismiss Andersen's complaint in its entirety, maintaining: (1) that service of process was insufficient; and (2) that this Court should abstain from exercising its jurisdiction or otherwise stay the current action in light of a concurrent action between the parties ongoing in the United States District Court for the District of Maryland. For the reasons set forth below, Defendant's motion to dismiss is granted such that the current action is stayed.

**Background**

Plaintiff Andersen Windows, Inc., a Minnesota Corporation, sells window and patio door products to Defendant Delmarva Sash & Door Co., a distributor, who in turn resells the products to dealers and others. Andersen and DSD have been engaged in business together since 1976, although the parties did not enter into a written distributor agreement until May 25, 1995. In 1995, the parties entered into two identical distributor agreements, one for each of DSD's two locations (in Barclay, Maryland, and Richmond, Virginia).[1]

Section 13.A of the Agreement includes a termination provision, which allows either party to terminate the Agreement without cause by providing 60 days advance notice of the termination. By letter dated October 2, 2001, Andersen notified DSD of its termination of the Agreement and the termination of DSD as an Andersen distributor, effective December 1, 2001. Andersen contends that, subsequent to its termination of the Agreement and during the course of mediation, DSD persistently claimed that the termination was in violation of Maryland law and that it was entitled to multi-million dollar damages.

---

1 Hereinafter, the court will reference "the Agreement"; however, the Court's analysis is intended to address both of the distributor agreements between Andersen and DSD.

DSD contends that none of the terms in the Agreement were negotiable, and that the Agreement amounts to a contract of adhesion given the long-standing relationship between the parties and the extent to which DSD's business had become comprised of Andersen products. DSD further contends that, before the termination, Andersen advised DSD that its relationship with Andersen would be best served if DSD merged with or acquired another company to enlarge its territories, capabilities, cash flow, and ability to serve its customers in accordance with Andersen's future plans. DSD alleges that Andersen then repeatedly refused to grant consent to DSD to merge with or sell to another company. DSD alleges that it had been initially involved in discussions with Morgan Products Ltd. ("Morgan"), a Delaware distributor and, purportedly, the largest Andersen distributor nationwide. Effective July 29, 1999, however, Andersen merged with Morgan. Andersen subsequently refused to grant consent to DSD to merge with a company other than Morgan and then terminated the distributor agreement. As a result, Andersen attained 100% control of the distributor market of Andersen products in the territory previously served by DSD.

Plaintiff claims that DSD's allegations of legal violations are contrary to the following terms of the Agreement: (1) the forum selection clause; (2) the termination provision; and (3) the damages and liability limitations. The forum selection clause requires that all claims brought by DSD be filed in state or federal court in Minnesota. The termination provision grants either party the option to terminate the agreement without cause by providing 60-day advance notice of the termination. The damages provision limits all damages to direct damages in connection with any controversy, claim or cause of action concerning the agreement.

In response to DSD's contentions post-termination and during mediation, Andersen filed a complaint in United States District Court of Minnesota on January 10, 2002: (1) alleging breach of the agreement; and (2) requesting injunctive relief from actions filed in any court other than a state or federal court in Minnesota.

The summons in the current action was signed and sealed by the Clerk of Court on January 10, 2002, and was sent to the process server along with an unsigned, unsealed copy. Apparently on March 6, 2002, DSD's agent was served with the unsigned and unsealed summons and a copy of the Complaint. However, Andersen re-served the *signed* and *sealed* summons on DSD's agent on April 19, 2002.

On February 22, 2002, DSD and five stockholders not party to the Minnesota action filed a separate lawsuit against Andersen in Maryland state court. The Maryland complaint contains six counts seeking damages for Andersen's alleged breach of agreement, breach of duty of good faith and fair dealing, tortious interference, unfair competition, and violations of the Minnesota Franchise Act, Maryland Fair Distributorship Act, and Maryland Antitrust Act. On March 28, 2002, Andersen successfully removed the Maryland state court action to the United States District Court for the District of Maryland and subsequently moved to dismiss the litigation or, alternatively, to transfer the venue to the District of Minnesota. DSD has opposed Andersen's motion and concomitantly seeks to remand the action to Maryland state court. Both motions are currently pending before the Maryland United States District Court.

On April 15, 2002, DSD filed the current Motion to Dismiss Andersen's Complaint for insufficiency of process and according to the *Colorado River* abstention doctrine.

## Discussion

### 1. Standard of Review

In deciding a motion to dismiss, the Court must assume all facts in the Complaint to be true and construe all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). The Court grants a motion to dismiss only if it is clear beyond any doubt that no relief could be granted under any set of facts consistent with the allegations in the Complaint. *Id.* The Court may grant a motion to dismiss on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The Court need not resolve all questions of law in a manner which favors the complainant; rather, the Court may dismiss a claim founded upon a legal theory which is "close but ultimately unavailing." *Id.* at 327.

### 2. Issues

#### a. Insufficiency of Process

DSD argues that its motion to dismiss should be granted under Fed. R. Civ. P. 12(b)(4) because the summons delivered upon its agent was not signed by the Clerk of Court nor sealed by the Court, in violation of Fed. R. Civ. P. 4.[2] Although no time was dedicated at the hearing to

---

2 Fed. R. Civ. P. 4 states in relevant part:

> (a) **Form.** The summons shall be signed by the clerk, bear the seal of the court, identify the court and parties, be directed to the defendant, and state the name and address of the plaintiff's attorney or, if unrepresented, of the plaintiff. . . .
> (b) **Issuance.** Upon or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the summons is in proper form, the clerk shall sign, seal, and issue it to the plaintiff for service on the defendant. . . .

this issue, and Andersen contended, without significant response from DSD, that DSD abandoned this argument, the Court finds this argument to be unavailing for the following reasons.

Under Fed. R. Civ. P. 4(m), a plaintiff has 120 days after the filing of the complaint to serve the summons and complaint. In this case, 120 days from the filing date was May 10, 2002. While the first summons served on DSD's agent was unsigned and unsealed, Andersen cured the defective service by re-serving a properly signed and sealed summons on April 19, 2002. Because Andersen's curative action was taken before May 10, 2002, service in this action was effective.

Furthermore, when there is a technical violation of Rule 4, "dismissal is not appropriate unless the party has been prejudiced." *Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir. 1987). "Rule 4, Fed. R. Civ. P., is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Sanderford v. Prudential Ins. Co. of America*, 902 F.2d 897, 900 (11th Cir. 1990). There is no dispute that DSD received service of the complaint and the unsigned and unsealed summons, followed by the signed and sealed version. Despite any initial technical infirmity, DSD received constructive notice of the complaint. DSD was aware of the litigation and filed the current motion on April 15, 2002, 4 days *before* the process defect was cured. To argue that DSD suffered prejudice by the technical violation of the rule is disingenuous.

**b. Abstention Doctrine**

"The federal courts have a 'virtually unflagging obligation to exercise the jurisdiction given them.'" *Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Cooperatives, Inc.*, 48 F.3d

294, 297 (8th Cir. 1995) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)). However, the *Colorado River* abstention doctrine empowers a federal court to decline to exercise or postpone the exercise of its jurisdiction in *exceptional circumstances* where to order the parties to repair to the state court would clearly serve an important countervailing interest. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). The court may, in exceptional circumstances, "abstain from hearing a suit and await the outcome of parallel proceedings as a matter of wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation." *AAR Int'l, Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 517 (7th Cir. 2001) (citing *Colorado River*, 424 U.S. at 817) (quotations omitted).

Under *Colorado River*, the Court considers the following factors to determine whether exceptional circumstances exist to warrant abstention: (1) whether either court has assumed jurisdiction over a *res*; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5) whether state or federal law controls; and (6) the adequacy of the state forum to protect the parties' rights. *Colorado River*, 424 U.S. at 818.

The *Colorado River* abstention doctrine is generally applied in the circumstance where two parallel proceedings occur in a state and federal court; however, the doctrine may also be applied to parallel proceedings in two federal courts. If the same issues are presented in an action pending in another federal court, one of these courts may stay the action before it or, in some circumstances, enjoin the proceeding in the other federal court. *See Kerotest Mfg. Co. v.*

*C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952); 17A Charles A. Wright, Arthur R. Miller, & Edward H Cooper, *Federal Practice and Procedure: Jurisdiction* § 4247 (2d ed. 1988).

The first factor is not at issue here because this action does not involve a *res*. With respect to the second factor, the inconvenience of the federal forum, the parties address the presence and validity of the forum selection clause. Typically, a forum selection clause in an agreement represents a waiver of any objection to the inconvenience of the federal forum. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 12, 15 (1972) (holding forum selection clauses to be *prima facie* valid and enforceable unless enforcement is unreasonable and unjust or the clause is obtained through fraud or overreaching); *Orix Credit Alliance, Inc. v. Bell Realty, Inc.*, 1994 WL 86394 *3 (S.D.N.Y. 1994) (finding waiver of inconvenience argument by valid forum selection clause). As the parties concede however, the validity of the forum selection clause is not squarely before the court by the current motion. Nonetheless, irrespective of the forum selection clause, the Court concludes that the selected forum is not so gravely inconvenient that DSD will be deprived of its day in court. The convenience or inconvenience for the parties is equal whether litigating in Minnesota or Maryland. As a result, this factor does not weigh in favor of abstention.

The third factor relates to whether maintaining separate actions will result in piecemeal litigation. While the two concurrent actions, as they are now postured, are not perfect reflections of each other, the claims clearly arise from the same set of facts. In the interest of judicial economy; it is the Court's view that these issues should be heard in one court and in one complete action. That being said, however, the Court does not conclude, as DSD argues, that this factor necessarily weighs in favor of abstention. There is no evidence before the Court that

to the extent that the actions are not overlapping, the missing parties and claims could not properly be joined or asserted in the action before this Court. Whether state or federal law controls, the fifth *Colorado River* factor also does not favor abstention. Both courts are equally competent to resolve which state law should apply and then to apply it. To the extent that federal law is at issue, it seems obvious that both courts are equally up to the task.

The sixth factor addresses the adequacy of the state forum to protect the parties' rights. Here, at this juncture, there is no state forum. However, the question becomes whether the rights of Andersen or any party for that matter, would be compromised if the Court were to abstain from hearing the current action. Because Andersen is involved in both actions, there is no apparent risk that its interests and rights will not be protected. To the extent that certain parties in the Maryland action are not also parties in the Minnesota action, it seems that either their interests will be protected by DSD because the Maryland plaintiffs are the shareholders of the closely-held entity, or they will be unaffected because they are individuals distinct from the corporation and not bound by its obligations. Nonetheless, even to the limited extent that this factor weighs in favor of abstention, the Court finds that, taking the circumstances as a whole, exceptional circumstances do not exist to warrant the Court's abstention from exercising jurisdiction over the current action.

The fourth factor under *Colorado River* relates to whether one case has priority over the other, and it is this factor that proves determinative in the Court's analysis. As a preliminary matter, the parties do not dispute that the Minnesota action was filed before the Maryland action and thus the Minnesota case appears to have priority. However, the Court's analysis does not

stop there. In light of the circumstances surrounding the filing of the current action, the Court is compelled to take a closer look at the substance of the action before it.

The "first to file" rule provides that where concurrent jurisdiction exists, the first court to obtain jurisdiction has priority to consider the case. *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993). This is not a rigid rule, but should be applied in a manner best serving the interests of justice. *Northwest Airlines, Inc.*, 989 F.2d at 1005. The prevailing standard is that "in the absence of compelling circumstances, the first-filed rule should apply." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 675 F.2d 1169, 1174 (11th Cir. 1982). In *Northwest*, the Eighth Circuit noted two "red flags" that suggest compelling circumstances might exist. One red flag is if the party filing the action was on notice that the defendant was considering filing suit against it. *Id.* at 1007. A second red flag is an action for declaratory judgment. An action for declaratory judgment may indicate a preemptive strike rather than a suit for damages or equitable relief. *Id.*

"Typically, the first-filed rule is applied when an action is filed in two federal courts. However, the rule is applied with equal force when an action is filed in federal court and state court." *Commercial Union Ins. Companies v. Torbaty*, 955 F. Supp. 1162, 1163 n.1 (E.D. Mo. 1997). The purpose of the rule is to avoid duplication of judicial effort, avoid vexatious litigation in multiple forums, achieve comprehensive disposition of litigation among parties over related issues, and eliminate the risk of inconsistent adjudication. *Regions Bank v. Wider & Mastroianni, P.C.*, 170 F. Supp.2d 436, 439 (S.D.N.Y. 2001).

Upon a close review of Andersen's Complaint and the circumstances under which it was filed, the Court finds both flags to be waving in this case. By seeking damages and injunctive

relief, it appears to the Court that Andersen crafted its Complaint to avoid the appearance of the second flag–a request for declaratory judgment. However, the Court is not persuaded that any controversy had yet arisen to warrant a claim for breach of agreement, and the injunctive relief requested, in essence, amounts to a request for declaratory judgment. At the time the action was filed, DSD had communicated its complaints to Andersen and may have even threatened litigation-the first red flag; however, threats do not amount to action taken that could result in a breach of the Agreement. Moreover, it is unclear to the Court what damages Andersen could have sustained simply due to threats of litigation. Even to the extent that Andersen's damages amount to attorney's fees incurred through the course of mediation and in anticipation of potential litigation, such damages must attach to a breach. While Andersen may now be able to bring a viable breach of agreement claim since DSD indeed brought an action in Maryland, the Court determines that Andersen's current Complaint was filed in anticipation of DSD's eventual action and alleged breach. By further requesting the Court to enjoin DSD from filing any action other than within the courts of Minnesota, Andersen has ultimately requested the Court to *declare* the forum selection clause to be valid. In light of this evaluation, the Court determines that the current action was filed when it was in order to prevent or preempt any other action such as the case in Maryland.

The Court is aware that subsequent to the hearing on DSD's motion to dismiss, Andersen filed an Amended Complaint adding claims of promissory fraud, breach of contract-duties of good faith and fair dealing, promissory estoppel, unjust enrichment, unfair competition, unfair or deceptive acts or practices, and conspiracy. Notably, Andersen's complaint no longer contains a

claim for "equitable relief." The Court reads the Amended Complaint to underscore the Court's concerns and characterization of the original Complaint.

Prior to its receipt of Andersen's Amended Complaint, the Court fully intended to dismiss Andersen's complaint, *sua sponte*, for failure to state a claim upon which relief may be granted. *Pugh v. Parish of St. Tammany*, 875 F.2d 436 (5th Cir. 1989) (under 12(b)(6), a court may dismiss an action *sua sponte* if the claim has no basis in law or fact and the procedure is fair). To maintain the early filing date of this action for claims that arose thereafter when the original claims had no basis upon which relief could be granted at the time that they were filed seems patently unfair to the Court. While the Court recognizes the concerns that parties have of defending against actions in fora from which they may have a negotiated right to be kept, the Court is loathe to provide a forum in which a party may rush to simply place a reservation for an impending action that may or may not arise.

While this factor arguably weighs heavily in favor of abstention, the Court finds the particular circumstances of this case and the interest of judicial economy to warrant a stay of the current action in this Court. Most notably, the motion to dismiss or to transfer venue that is currently pending in the Maryland court could result in this Court being presented with both actions between the parties. If that time comes, decisions will likely be made to determine how to streamline the single dispute reflected in the two separate actions. Accordingly, the Court shall stay the current matter before it, pending a determination or resolution in the Maryland action.

For the reasons stated, **IT IS HEREBY ORDERED** THAT:

1. Defendant Delmarva Sash and Door Co. of Maryland, Inc.'s Motion to Dismiss the Complaint filed by Andersen Windows, Inc. (Doc. No. 9) is **GRANTED** such that the current action is **STAYED**, pending further order of the Court.

Dated: June 28, 2002

DONOVAN W. FRANK
Judge of United States District Court